IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

JERRY R. BROWN,

      Plaintiff,

v.                                CASE NO. 2:06-cv-01073

MICHAEL J. ASTRUE,
Commissioner of Social Security[1],

      Defendant.


## M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case is presently pending before the court on Plaintiff's Memorandum in Support of Plaintiff's Motion for Summary Judgment[2] and Defendant's Brief in Support of Judgment on the Pleadings. Both parties have consented in writing to a decision by the United States Magistrate Judge.

Plaintiff, Jerry R. Brown (hereinafter referred to as

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Under Fed. R. Civ. P. 25(d)(1) and 42 U.S.C. § 405(g), Michael J. Astrue is automatically substituted as the defendant in this action.

[2] Plaintiff did not file a motion for summary judgment. The court's Local Rules direct that the plaintiff "shall file and serve a brief in support of the complaint," and the court construes Plaintiff's Memorandum as a brief in support of the complaint. Local Rules of the United States District Court for the Southern District of West Virginia, Local Rule of Civil Procedure 9.4(a).

"Claimant"), filed an application for DIB on March 25, 2005, alleging disability as of September 24, 2004, due to broken ankles, arthritis, a neck injury, prostate problems, left kidney problems, pain in his joints, hands, arms and feet, ringing in his ears and hearing loss. (Tr. at 95-97, 146, 159, 171.) The claim was denied initially and upon reconsideration. (Tr. at 61-65, 67-69.) On January 20, 2006, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 71.) The hearing was held on July 19, 2006, before the Honorable Theodore Burock. (Tr. at 21-58.) By decision dated August 25, 2006, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 12-20.) The ALJ's decision became the final decision of the Commissioner on November 17, 2006, when the Appeals Council denied Claimant's request for review. (Tr. at 5-7.) On December 28, 2006, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential

evaluation" for the adjudication of disability claims.  20 C.F.R. § 404.1520 (2006).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. § 404.1520(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. § 404.1520(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. § 404.1520(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. § 404.1520(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. §§ 404.1520(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. § 404.1520(f) (2006).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has

3

the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. <u>McLamore v. Weinberger</u>, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 14.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of arthritis, a neck impairment, headaches, a hearing impairment and gastroesophageal reflux disease. (Tr. at 14.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 15.) The ALJ then found that Claimant has a residual functional capacity for medium work, reduced by nonexertional limitations. (Tr. at 16.) As a result, Claimant cannot return to his past relevant work. (Tr. at 18.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as sandwich maker and warehouse worker, which exist in significant numbers in the national economy. (Tr. at 19.) On this basis, benefits were denied. (Tr. at 19.)

<u>Scope of Review</u>

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as

4

> "evidence which a reasoning mind would accept
> as sufficient to support a particular
> conclusion. It consists of more than a mere
> scintilla of evidence but may be somewhat less
> than a preponderance. If there is evidence to
> justify a refusal to direct a verdict were the
> case before a jury, then there is 'substantial
> evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting

Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)).

Additionally, the Commissioner, not the court, is charged with

resolving conflicts in the evidence.  Hays v. Sullivan, 907 F.2d

1453, 1456 (4th Cir. 1990).  Nevertheless, the courts "must not

abdicate their traditional functions; they cannot escape their duty

to scrutinize the record as a whole to determine whether the

conclusions reached are rational." Oppenheim v. Finch, 495 F.2d

396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the

Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was fifty-eight years old at the time of the

administrative hearing. (Tr. at 25.) Claimant completed the ninth

grade. (Tr. at 25.)  In the past, he worked as a mobile equipment

operator in the mines.  (Tr. at 55.)

The Medical Record

The court has reviewed all evidence of record, including the

medical evidence of record, and will summarize it briefly below.

Claimant injured his knee in June of 1978.  Claimant sustained

5

a fracture to the left medial femoral condyle.  By September of 1978, Claimant had full range of motion in the knee and was allowed to return to work.  (Tr. at 184.)  In February of 1983, Claimant sustained a crushing injury to his ankles.  (Tr. at 184-85.) Claimant returned to work in May of 1983.  (Tr. at 186.)  In 1985, Claimant sustained multiple facial injuries, a displaced fracture of the nasal bone and anterior nasal side, chipped teeth and injury to the infraorbital nerve.  (Tr. at 186.)

The record includes treatment notes from Family Medical & Surgical Centers dated September 27, 2002, October 11, 2002, October 25, 2002, December 3, 2002, and January 10, 2003.  Claimant was treated for hyperlipidemia, degenerative arthritis, GERD, a hiatal hernia, spermatocoele, frequency of urination and benign prostatic hypertrophy,  (Tr. at 192-96.)

Cervical spine x-rays on September 27, 2002, showed arthritis and degenerative changes centered at the C5-6 level.  (Tr. at 197.) X-rays of the nasal bones on September 27, 2002, showed a fracture of the mid nasal bones with anterior fracture fragment displaced approximately 2.0 mm inferiorly in relationship to the proximal fracture fragment.  (Tr. at 198.)  X-rays of the lumbar spine on September 27, 2002, showed degenerative changes.  (Tr. at 199.)

In December of 2004, Claimant was diagnosed with a bladder outlet obstruction, organic impotency, hematospermia and microscopic hematuria.  Claimant underwent transurethral resection

6

of the bladder on December 8, 2004.  (Tr. at 230.)  On January 25,
2005, Peter J. Edgerton informed Claimant that the pathology was
benign.  (Tr. at 201-04.)

   The record includes treatment notes from Bala Prabhakar, M.D.
dated October 6, 2004, through April 6, 2005.  On October 6, 2004,
Claimant was diagnosed with hematura, left-sided hydrocele and mild
hypertension.  (Tr. at 267.)  On November 2, 2004, Dr. Prabhakar
diagnosed   hypertension-prehypertension,   GERD   and   hematuria.
Claimant was referred to a urologist.  Dr. Prabhakar recommended
that Claimant stop smoking tobacco.  (Tr. at 266.)  On December 6,
2004, Dr. Prabhakar noted that Claimant saw a urologist who did a
cystoscope and has plans for further proceedings.   In addition,
Claimant underwent a CT scan of the abdomen and pelvis, which
showed findings on the left adrenal gland and also prostatic
calcifications.  (Tr. at 265.)  Claimant denied any other symptoms,
such as chest pain, palpitations, cough, wheezing, dizziness,
syncope or leg edema.   Dr. Prabhakar diagnosed GERD, benign
hypertension, tobacco use, elevated ALT, adrenal adenoma and
hydrocele.  (Tr. at 265.)  On April 6, 2005, Claimant reported
doing well since his last visit, though Claimant's urologist was
moving out of town, and his surgeon referred him to someone else.
Claimant reported difficulty finding a job, but voiced no specific
complaints in regard to his urinary symptoms.   Dr. Prabhakar
diagnosed GERD, stable, benign hypertension/pre-hypertension,

adrenal adenoma/incidentaloma, hydrocele and tobacco use.  (Tr. at 263.)

On June 1, 2005, Miraflor G. Khorshad, M.D. examined Claimant at the request of the State disability determination service.  Dr. Khorshad diagnosed degenerative arthritis, c-spine and lumbar spine, and benign prostatic hypertrophy.  (Tr. at 275.)

On July 11, 2005, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform medium level work, reduced by a need to avoid concentrated exposure to vibration.  (Tr. at 280-87.)

On September 19, 2005, Claimant underwent an esophagogastroduodenoscopy and a colonoscopy.  Claimant had a hiatal hernia, erosive esophagitis, colon polyps and diverticulosis.  (Tr. at 290.)

On October 25, 2005, Kevin Hibbett, M.D., who had performed Claimant's esophagogastroduodenoscopy and colonoscopy, completed a Routine Abstract Form-Physical.  He indicated all areas were normal, and noted Claimant's diagnoses.  (Tr. at 311.)

On December 6, 2008, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform medium level work, reduced by a need to avoid concentrated exposure to extreme cold, wetness and vibration. (Tr. at 313-20.)

The record includes a treatment note from Dr. Prabhakar dated

July 8, 2006.  Dr. Prabhakar noted that Claimant had been "lost for
follow up for more than a year now" but was there to receive
refills for Zantac.  Claimant had been doing well otherwise "except
for GERD symptoms, which tend to recur when he is off Zantac."
(Tr. at 321.)  Claimant complained of arthritis symptoms in the
neck, back and hands.  Deep tendon reflexes were symmetrical.  Dr.
Prabhakar diagnosed GERD, osteoarthritis of the shoulder, back and
hips and generalized fatigue and malaise.  (Tr. at 321.)

Claimant's Challenges to the Commissioner's Decision

     Claimant asserts that the Commissioner's decision is not
supported by substantial evidence because (1) the ALJ failed to
properly weigh the evidence of record related to Claimant's pain
and credibility; (2) the ALJ failed to consider Claimant's
impairments in combination; and (3) there was not substantial
evidence to deny Claimant's claim.  (Pl.'s Br. at 11-15.)

     The Commissioner argues that (1) substantial evidence supports
the ALJ's decision that Claimant could perform medium work; (2) the
ALJ's pain and credibility findings are supported by substantial
evidence; (3) the ALJ considered Claimant's impairments in
combination; and (4) the ALJ correctly assessed Claimant's
credibility.  (Def.'s Br. at 7-13.)

     The court finds that the ALJ's pain and credibility analysis
is in keeping with the applicable regulation and case law and is
supported by substantial evidence.  20 C.F.R. § 404.1529(b) (2006);

9

SSR 96-7p, 1996 WL 374186 (July 2, 1996); <u>Craig v. Chater</u>, 76 F.3d 585, 594 (4th Cir. 1996). The ALJ determined that Claimant produced evidence of an impairment that could reasonably be expected to cause the alleged symptoms. (Tr. at 18.) The ALJ proceeded to the second step in the pain analysis, and his decision contains a thorough consideration of Claimant's daily activities, the location, duration, frequency, and intensity of Claimant's symptoms, precipitating and aggravating factors and Claimant's medication. (Tr. at 16.)

The ALJ noted Claimant's testimony that he is unable to walk 100 yards without use of a cane or crutches, that Claimant has constant pain in his hands, neck, shoulders and back, that he can only stand for fifteen to twenty minutes at a time and lift ten pounds at a time. Claimant testified that physical activity makes his pain worse. (Tr. at 17.)

The ALJ noted that the "clinical findings on examination, the diagnostic tests, and the claimant's treatment which has been conservative all of which evidence has been discussed above do not support the claimant's testimony." (Tr. at 17.) The ALJ further found that

> [t]he objective findings also do not provide a basis or need [for] use of a cane. When examined on October 6, 2004, the claimant denied having any pain (Exhibit 5F/5). When examined on June 1, 2005, the claimant had no assistive device. He had a normal gait. He was able to get on and off the examining table without assistance. He was able to do the heel to toe maneuver. He was able to sit and squat. He had good range of motion of the

10

> cervical spine except for some mild tightness.
> Neurological examination was within normal limits
> (Exhibit 6F).

(Tr. at 17.)  Regarding medication, the ALJ observed that while Claimant "alleges significant pain, he only takes Ibuprofen." (Tr. at 17.)

The ALJ considered Claimant's subjective complaints related to his headaches.  The ALJ determined that the objective findings do not support Claimant's extreme allegations of a headache for nine straight months.  Claimant "took Tylenol for the headaches." (Tr. at 17.)

The ALJ also considered Claimant's subjective complaints related to dizziness, rectal bleeding, and diarrhea 24 hours per day.  The ALJ provided adequate explanation as to why he found these complaints not credible.  (Tr. at 17.)

The ALJ made additional general findings regarding Claimant's credibility:

> The undersigned notes that at the hearing the
> claimant testified that he collected unemployment
> benefits after his alleged onset date which indicates
> that he was holding himself out as able to work and this
> reflects poorly on his credibility. The undersigned also
> notes that the claimant ceased working when his company
> entered bankruptcy and shut down.  As such, the
> claimant's cessation of work was unrelated to his
> impairments.

> The undersigned observed the claimant entering the
> hearing room to be presented as if in great pain[.]
> However, as the hearing proceeded, the claimant's pain
> behavior diminished and then stopped.  This indicates
> that the claimant was attempting to present himself as
> being much more limited than he really is.

11

(Tr. at 18.)

Finally, the ALJ made the following findings regarding effectiveness of treatment, side effects from medication and Claimant's daily activities:

> As to effectiveness of treatment, the claimant's testimony would indicate failure of all treatment but the claimant is not credible.  In addition, there is no intensification of treatment which would be expected if the claimant suffered as alleged.

> The undersigned finds that there are no side effects established which would interfere with jobs identified by the vocational expert.

> The undersigned notes that the claimant greatly minimized his activities but there is no basis for such decreased activities of daily living.  At the hearing the claimant testified that he is able to take care of his own personal needs[.]  He stated that he watches television and sits on the porch.  He stated that he used to hunt but has not obtained a hunting license in the past eight years.

(Tr. at 18.)

The ALJ's pain and credibility analysis is a thorough and well reasoned one.  Contrary to Claimant's assertions, the ALJ did not reject Claimant's subjective complaints based on the medical evidence alone.  (Pl.'s Br. at 12.)  The ALJ fully considered all the factors identified above, and his findings are supported by substantial evidence of record.

Claimant argues that the ALJ punished him for only taking Ibuprofen for his pain, when Claimant testified essentially that he feared developing an addiction and that it "took me a month to get off of 'em and I went through all kinds of stuff.  I said I'd never

12

take 'em again even for the pain." (Tr. at 39.) The ALJ's statement, that "while the claimant alleges constant significant pain, he only takes Ibuprofen" (Tr. at 17), is an accurate statement, and is one of many findings by the ALJ, which justify his conclusion that Claimant's subjective complaints of pain and other symptoms were not entirely credible.

Next, the court finds that the ALJ adequately considered Claimant's impairments alone and in combination throughout his decision and in keeping with 20 C.F.R. § 404.1523 (2006). The ALJ's decision, including his residual functional capacity finding for medium work reduced by nonexertional limitations and the hypothetical question posed by the ALJ at the administrative hearing reflect a careful consideration of all of Claimant's impairments and their combined effect. Notably, the ALJ considered Claimant's severe and nonsevere impairments alike in evaluating Claimant's subjective complaints, as is required by SSR 96-8p. SSR 96-8p, 1996 WL 362207, *34477 (July 2, 1996).

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the final decision of the Commissioner is AFFIRMED and this matter is DISMISSED from the docket of this court.

The Clerk of this court is directed to transmit copies of this Order to all counsel of record.

ENTER: March 10, 2008

Mary E. Stanley
United States Magistrate Judge